## WILLIAM H. MURPHY, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 10275–92.         Filed August 2, 1994.

*James Roach II,* for petitioner.
*Andrew J. Gottlieb,* for respondent.

### OPINION

RAUM, *Judge:* The Commissioner determined an income tax deficiency of $45,035 and additions to tax under sections 6653(a) and 6661 of $2,252 and $11,259, respectively, for the

year 1988.[1] Petitioner and his then wife sold their jointly owned principal residence. About a year later the couple separated, and prior to divorce petitioner purchased a principal residence for himself within the 2-year replacement period permitted by section 1034(a). His wife, however, failed to purchase a replacement residence within the 2-year period. The issues for decision are: (1) Whether petitioner may under section 1034 defer his allocable one-half of the total gain realized by him and his ex-wife on the sale of their jointly owned residence; (2) whether, and the extent to which, petitioner is jointly and severally liable under section 6013 for tax on such gain as must be recognized on the sale of the residence; and (3) whether petitioner is subject to additions to tax under sections 6653(a) and 6661 for negligence and substantial understatement of income tax, respectively.

Petitioner resided in Phoenix, Arizona, at the time he filed his petition. On December 15, 1988, petitioner and his then wife, Judy Murphy (Mrs. Murphy), sold their jointly owned personal residence in Long Grove, Illinois, for $475,000, realizing a gain of $185,629. Petitioner and Mrs. Murphy filed their joint 1988 U.S. Individual Income Tax Return (Form 1040) on March 28, 1989. The Murphys did not report the gain realized on the sale of their Illinois home as gross income on their 1988 return. They instead deferred recognition of the gain, pursuant to section 1034, by indicating their intention on Form 2119 (entitled "Sale of Your Home") to purchase another residence within the 2-year replacement period designated in section 1034.

Petitioner and his wife were separated in December 1989. They were later divorced in May 1991. Subsequent to the separation, but prior to the divorce, petitioner purchased a personal residence in Phoenix, Arizona, for $199,704. The purchase was made on December 10, 1990, within the 2-year replacement period specified in section 1034(a). Mrs. Murphy, on the other hand, did not purchase a replacement residence within the 2-year period.

Petitioner thereafter filed an amended 1988 joint return (Form 1040X), which he signed and dated March 13, 1991. Mrs. Murphy refused to sign the amended return. On the

---

[1] Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the year at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

amended return, petitioner reported as additional gross income $37,506 in respect of gain on sale of the residence formerly occupied by him and his wife. Petitioner explained the changes shown on the amended return, as follows:

The taxpayers filed a joint return in 1988 deferring the gain on the sale of their personal residence under Internal Revenue Code Section 1034. In February 1989, the taxpayers separated. William Murphy has replaced his ½ interest in his home. We are filing this return reporting that purchase pursuant to Rev. Rul. 80–5.[2] Judy Murphy refuses to sign the return.

The computation of the additional $37,506 gain was reported on Form 2119 "AS AMENDED" and on a supporting statement attached to the amended return. In the computation, petitioner reported one-half of the amounts originally reported as the selling price, selling expense, and tax basis[3] for the property sold. The adjusted sale price—i.e., selling price net of selling expense—of the property was similarly shown as one-half of the originally reported amount. Petitioner thus calculated $37,506 recognized gain as the difference between the revised adjusted selling price ($237,210, i.e., one-half of the difference between the original $475,000 selling price and the original $580 expenses of sale) and the $199,704 purchase price of his new residence.

The Government contends that $148,123 must be restored to petitioner's gross income; i.e., the entire $185,629 gain on sale of the Murphys' residence minus the $37,506 reported in the amended return.[4] We hold that petitioner correctly computed the amount of gain attributable to him under section 1034. And if this were the only issue before us petitioner would be entitled to prevail in full. However, we sustain the

[2] Rev. Rul. 80–5, 1980–1 C.B. 284, ruled that a divorced taxpayer who realized gain on the sale of a residence formerly owned by the taxpayer and his ex-spouse, and who did not purchase a new residence within the then-required 18-month period, must report the gain on an amended joint return. Since the ex-spouse refused to sign the amended joint return, the taxpayer was required to attach a statement to the amended return informing the IRS of the spouse's refusal to sign the return.

[3] The tax basis reported by petitioner on Form 2119 of the amended return and on the attached statement actually was less than one-half of the originally reported tax basis because of additional adjustments not relevant for purposes of this case.

[4] However, the deficiency notice used the figure of $133,794 as the amount restored, without any explanation as to how that figure was determined.

The Commissioner also reduced by $2,676 deductions taken by petitioner as miscellaneous itemized expenses. Such amounts are deductible only to the extent in excess of 2 percent of adjusted gross income. Sec. 67. Since petitioner's AGI was increased by the inclusion in gross income of $133,794 additional gain on the sale of his former residence, his miscellaneous itemized deductions were decreased by 2 percent of that amount, or $2,676. Since the $2,676 adjustment to petitioner's taxable income is purely computational, it is not in controversy in this case.

Government's contention that each spouse is jointly and severally liable for any deficiency properly determined against both as a result of the joint return filed by them. But we hold further that the method used by the Commissioner in determining the deficiency here was faulty, and that the joint and several liability was an amount less than that determined by the Commissioner.

### 1. *Section 1034 and Gain on Sale of the Residence*

Taxpayers are ordinarily required to treat gains realized on the sale of property as taxable during the year of sale. Secs. 1001, 61. However, section 1034, captioned "ROLLOVER OF GAIN ON SALE OF PRINCIPAL RESIDENCE", requires taxpayers, in certain circumstances, to defer recognition of gain realized on the sale of their principal residence. Under that provision, if a taxpayer sells a principal residence (old residence) and, within a period beginning 2 years before and ending 2 years after the sale, purchases a new principal residence (new residence), then the taxpayer will recognize gain realized on the sale only to the extent that the "adjusted sales price"—basically the selling price minus selling expenses—of the old residence exceeds the cost of purchasing the new residence. Sec. 1034(a) and (b). Thus, by applying all of the sale proceeds (net of selling costs) from the old residence toward the purchase of a new residence, a taxpayer defers recognition entirely. Sec. 1.1034–1(a), Income Tax Regs. If less than all of the sale proceeds are so applied, the taxpayer recognizes gain to the extent of the difference between the net proceeds and the cost of the new residence, limited to the gain realized on the sale. *Id.*

Among the issues for decision here is how the nonrecognition scheme of section 1034 applies when a married couple sells its jointly owned residence prior to separating from one another, and then, after separation, one (but not both) of the former spouses timely purchases a new residence for less than half the sale price of the former residence.

Petitioner argues that each of the spouses separately realizes one-half of the gain realized by the couple; and that each spouse's one-half share of realized gain is recognizable under section 1034 only to the extent that his or her one-half share of the adjusted sale price exceeds the cost of the sepa-

rately purchased replacement residence. The Commissioner contends that the entire gain realized by the couple when their old residence was sold must be recognized to the extent that the *entire* amount of their adjusted selling price, as reported on their return for the year of sale, exceeds the cost of purchasing a replacement residence. Apart from the impact of joint and several liability, which we consider hereinafter, we hold for petitioner as to the operation of section 1034 in respect of this aspect of the case.

The issue has been addressed in a published ruling by the IRS. In Rev. Rul. 74–250, 1974–1 C.B. 202, a husband and wife agreed to live apart, executed a contract of sale with respect to their principal residence, and continued to occupy the residence until the sale was completed. Under State law, each spouse was entitled to one-half of the sale proceeds,[5] and each therefore separately realized a gain on the sale of the residence. Between the time that the sale contract was executed and the sale was completed, the husband and wife individually executed purchase contracts for separate residences. The cost of each new residence exceeded the husband's and wife's respective shares of the adjusted sale price of the old residence, and the purchases were completed within 1 year of the date on which the old residence was sold.[6] On these facts, the IRS ruled that the nonrecognition provisions of section 1034(a) applied separately to the gains realized by the husband and the wife from the sale of their principal residence.

The facts set forth in Rev. Rul. 74–250, *supra,* closely parallel those in the instant case, except for the fact that petitioner's wife in the instant case did not purchase a new residence. Respondent on brief attempts to distinguish the ruling on that basis, without articulating any reason why the purchase of a residence by only *one* of the spouses, as opposed to both, necessitates a different taxing scheme under section 1034. The Government apparently misapprehends the rationale of Rev. Rul. 74–250, *supra.* The reason that each former spouse realized only half of the overall gain was not

---

[5] Respondent does not argue or even suggest that under applicable State law each spouse in the present case was not entitled to one-half the proceeds of the sale of their jointly owned property.

[6] At the time of the ruling, the replacement period in sec. 1034(a) was within 1 year before or after the sale of the former residence.

because each reinvested his or her share of the proceeds toward the purchase of a new home, but instead because each was entitled to only half of the proceeds. Applying Rev. Rul. 74–250, *supra,* to the facts of petitioner's case, we conclude that petitioner properly calculated the gain realized by him on the sale of the residence previously owned by petitioner and his then wife as one-half of the total gain realized by both of them.

Our conclusion is supported by the analysis of this Court in *Hall v. Commissioner,* T.C. Memo. 1976–311, 35 T.C.M. 1399, 1407, revd. on another issue, 595 F.2d 1059 (5th Cir. 1979). In *Hall,* the taxpayer and his wife were divorced during 1967, but their divorce agreement made no provision for the sale of their jointly owned residence, which the taxpayer sold in June 1967 for $32,000. After subtracting selling costs of $2,827.68, the net proceeds amounted to $29,172.32. The Court treated one-half of the proceeds as belonging to the divorced wife. Less than a year after the sale, the taxpayer paid $17,500.81 to construct a new residence which he then separately occupied and used as his own residence. He contended that he properly deferred recognition of his entire gain on the sale of the residence, pursuant to section 1034, because he used his share of the sale proceeds to purchase a new residence. In sustaining the taxpayer's contention, the Court stated:

Under that section [1034], if the adjusted sales price of his old residence is entirely reinvested in the purchase of the new residence and the other requirements are satisfied, no gain is recognized. *Since we have found that the petitioner was entitled to only one-half of the proceeds of the sale* of the Elm Street property [i.e., the residential property jointly held with his wife], his adjusted sales price for that property was $14,586.16 [i.e., one-half of the total adjusted sale price], *and since he paid more than that amount to construct his new residence, he has satisfied that requirement.* * * * [*Hall v. Commissioner, supra;* emphasis added.]

There was no indication in *Hall* as to whether the spouses had filed a joint return, and no consideration was there given to their joint and several liability. We now examine the role that joint and several liability plays in this case.

## 2. *Joint and Several Liability for Tax Owed With Respect to Joint Return*

It has long been established that if a joint return is filed, a single tax is imposed, which is computed on the basis of the combined taxable income of both spouses, and that the liability for such tax is joint and several. In the current Code, section 6013(d)(3) provides: "if a joint return is made, the tax shall be computed on the aggregate income and liability with respect to the tax shall be joint and several." Thus, although each spouse is a separate taxpayer, each is subject to tax on any deficiency properly determined with respect to the joint return filed by both. See *Pesch v. Commissioner,* 78 T.C. 100, 129–130 (1982); *Davenport v. Commissioner,* 48 T.C. 921, 926 (1967); *Dolan v. Commissioner,* 44 T.C. 420, 427 (1965). We explained the reason for the provisions establishing joint and several liability in *Sonnenborn v. Commissioner,* 57 T.C. 373, 380–381 (1971), as follows:

It is important that these provisions be kept in proper perspective. The filing of a joint return is a highly valuable privilege to husband and wife since the resulting tax liability is generally substantially less than the combined taxes that would be due from both spouses if they had filed separate returns. This circumstance gives particular emphasis to the statutory rule that liability with respect to tax is joint and several, regardless of the source of the income or of the fact that one spouse may be far less informed about the contents of the return than the other, for both spouses ordinarily benefit from the reduction in tax that ensues by reason of the joint return. * * *

However, a new problem is introduced by section 1034 when, after the filing of a joint return, the spouses separate in contemplation of divorce. In such circumstances, the separated spouses cannot realistically be expected to purchase a new jointly owned principal residence for both as a replacement for their jointly owned residence which they sold while living together. Congress did not deal with the problem when it enacted section 1034. Rev. Rul. 74–250, *supra,* was obviously intended, apart from joint and several liability, to fill the gap left in the statute by Congress.

Pursuant to Rev. Rul. 74–250, *supra,* each spouse is treated as the owner of one-half of the residence that was sold and one-half of the proceeds is attributed to each spouse. And each spouse is accorded the opportunity to separately pur-

chase a new residence with his or her one-half of the proceeds within the statutory period and thus defer recognition under section 1034 of that spouse's one-half of the gain realized on the sale of the jointly owned old residence. The result may appear to be strange since section 1034 obviously contemplates the purchase of one replacement residence, not two. Nevertheless, Rev. Rul. 74–250 is a realistic and sound interpretation of section 1034, which attempts to deal with what otherwise would appear to be an impossible situation. However, there still remains the question of how the joint and several liability of the spouses applies here in the light of Rev. Rul. 74–250.

The proceeds of sale of the jointly owned old residence were $457,000, producing a total gain of $185,629. Pursuant to Rev. Rul. 74–250, one-half of each of these amounts is attributable to each spouse. Mrs. Murphy did not reinvest her one-half of the proceeds in a new principal residence for herself, and thus the one-half of the gain attributable to her was no longer deferable. Petitioner, on the other hand, did reinvest $199,704 of his one-half share in a new residence for himself. That amount was computed to be $37,506 short of what was necessary to defer his entire one-half share of the gain. He accordingly included that $37,506 as additional gross income in the amended return that was filed, and he paid tax thereon. He thus satisfied in full the requirements of section 1034 in respect of reinvesting his one-half share of the proceeds. But, as just noted, the tax on Mrs. Murphy's one-half share of the gain on sale of the old residence was no longer deferred. It is at this point that the joint and several liability of the spouses comes into play.

Rev. Rul. 74–250, *supra,* in no way dealt with joint and several liability of the spouses in respect of their joint return. Petitioner continues to be severally liable for any deficiency based on the joint return. And in this case the only relevant deficiency is one attributable to Mrs. Murphy's one-half of the gain, which was not deferred under section 1034. In our judgment that is the extent of his liability.

We reject the Commissioner's method that calls for tax on a greater amount of taxable income. Pursuant to that method, petitioner would be liable for tax on the *entire* $185,629 realized on sale of the old residence, reduced only by the $37,506 reported by him in the amended return. We

think that this method fails to take into account the computations required by Rev. Rul. 74–250, which we hold represents a valid interpretation of section 1034. Accordingly, we hold that petitioner is taxable, pursuant to section 6013(d)(3), on that portion of the gain on sale reported in the joint return that remains after application of Rev. Rul. 74–250, *supra,* namely, Mrs. Murphy's one-half of $185,629.

## 3. *Additions to Tax*

The Commissioner determined additions to tax[7] against petitioner under section 6653(a) for negligence and section 6661 for substantial understatement of income tax. Petitioner has not made any argument on brief in opposition to the additions to tax, and they must therefore be deemed to have been conceded. See *Rothstein v. Commissioner,* 90 T.C. 488, 497 (1988).

Moreover, on the record before us, petitioner could not in any event prevail as to either of the additions to tax. As to the addition to tax for negligence imposed by section 6653(a), the record contains no evidence showing that there was no "failure to do what a reasonable and ordinarily prudent person would do under the circumstances" as negligence was defined in *Neely v. Commissioner,* 85 T.C. 934, 947 (1985) (quoting *Marcello v. Commissioner,* 380 F.2d 499, 506 (5th Cir. 1967)). And since the burden of proof was upon petitioner, *Marcello v. Commissioner, supra* at 506; *Enoch v. Commissioner,* 57 T.C. 781, 802 (1972); *Axelrod v. Commissioner,* 56 T.C. 248, 258 (1971), the addition to tax for negligence would have to be approved in the absence of any evidence to the contrary, *Grimes v. Commissioner,* 82 T.C. 235, 237 (1984).

As to section 6661(a), a taxpayer is subject to an addition to tax of 25 percent of the amount of any underpayment attributable to a substantial understatement of income tax. For this purpose, an understatement is defined generally as the difference between the amount of tax required to be shown on the return and the amount actually shown on the return. Sec. 6661(b)(2)(A). And an understatement is considered "substantial" if it exceeds the greater of 10 percent or

---

[7] These additions to tax have since been redesignated as penalties, and provisions comparable to secs. 6653(a) and 6661 now appear in the Code as sec. 6662.

120

$5,000. Sec. 6661(b)(1)(A). In the present case, the understatement clearly exceeds both amounts. Again, the Commissioner's determination under this section is presumptively correct, and the taxpayer bears the burden of proving that the imposition of additional tax pursuant to section 6661 is erroneous. Rule 142. He has not presented any evidence in the record establishing that section 6661 is inapplicable here.

Accordingly, either because petitioner is deemed to have conceded the sections 6653(a) and 6661(a) additions to tax or because the record in any event fails to establish that they are inapplicable, these additions to tax are sustained, except to the extent that they must be reduced by reason of petitioner's reinvestment of his one-half share of the sale proceeds and his payment of additional tax in accordance with the amended return.

*Decision will be entered under Rule 155.*